UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
APRYL N. FEATHERSTON,                   )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )        Civil Action No. 07-1933 (PLF)
                                        )
DISTRICT OF COLUMBIA,                   )
                                        )
        Defendant.                      )
_____)


OPINION

I.  BACKGROUND

        Plaintiff Apryl N. Featherston, a former employee of the Superior Court of the

District of Columbia, claims that after being diagnosed with bilateral carpel tunnel syndrome,

defendant the District of Columbia discriminated against her in violation of the Americans with

Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") (Count I) and the Rehabilitation Act of

1973, 29 U.S.C. § 791 *et seq.* (Count II); failed to provide, or to timely respond to claims for,

workers' compensation to which she is entitled (Count III); and discharged her in violation of

public policy (Count IV).  Defendant has moved to dismiss this case under Rule 12(b)(6) of the

Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted or,

alternatively, for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff purports to have subsequently withdrawn Count III but otherwise opposes defendant's

motion.

The Court will grant defendant's motion in part and deny it in part.  The Court will grant summary judgment for defendant on Count I only to the extent that plaintiff alleges discrete acts of discrimination that occurred beyond the applicable limitations period; it will deny summary judgment as to acts that allegedly occurred within the limitations period.  The Court will neither dismiss Count II nor grant summary judgment for defendant on that Count, because defendant's argument that the claims comprising Count II are untimely has  been considered and rejected earlier in this litigation.  Defendant offers no reason why that decision should be reconsidered.  The Court will construe plaintiff's withdrawal of Count III as a motion to amend her complaint to remove Count III or to voluntarily dismiss Count III and will grant such motion in part and deny it in part.  The complaint will be amended to remove Count III.  Defendant's motion then will be denied as moot as to Count III.  Finally, the Court will dismiss Count IV because plaintiff has failed to plead that she was engaged in any protected act for which she was allegedly fired in violation of public policy.

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss under Rule 12(b)(6)

Rule 12(b)(6) allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted).

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. at 94; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555; *Phillips v. Fulwood*, 616 F.3d 577, 581 (D.C. Cir. 2010). The complaint "is construed liberally in the [plaintiff's] favor, and [the Court should] grant [the plaintiff] the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions. *See id.* at 1276; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

### B.  Motion for Summary Judgment Under Rule 56

The Court will grant a motion for summary judgment if the pleadings and other materials in the record "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [or] interrogatory answers" show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(1)(A); *see also* Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] material fact is 'genuine' . . . if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party" on a particular claim.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Factual assertions in the moving

party's affidavits or declarations may be accepted as true and all justifiable inferences are to be

drawn in her favor unless the opposing party submits its own affidavits, declarations, or

documentary evidence setting forth specific facts that would permit a reasonable jury to find in

its favor.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992); *Laningham v. U.S. Navy*

813 F.2d 1236, 1242 (D.C. Cir. 1987).

## III.  ANALYSIS

### A.  *Summary Judgment Will Be Granted in Part and Denied in Part on Count I*

In 1998, while plaintiff was an employee of the Superior Court of the District of

Columbia, she was diagnosed with bilateral carpel tunnel syndrome, which "limits her fine motor

skills and her ability to lift heavy objects."  Statement of Material Facts Not in Dispute ("Def.'s

Facts") ¶¶ 1–2 [Dkt. # 34]; Plaintiff's Statement of Genuine Issues ("Pl.'s Facts") ¶¶ 1–2 [Dkt.

# 35].  Plaintiff requested accommodation of this disability, which defendant provided by placing

her on restricted duty.  Def.'s Facts ¶ 3; Pl.'s Facts ¶ 3.  Although her condition remained the

same, plaintiff returned to regular duty in 2001, but was unable to work for an extended period in

early 2004, later returning to work on restricted duty.  First Amended Complaint ("Compl.")

¶¶ 16, 18, 20 [Dkt. # 19].  By a letter dated December 14, 2004, however, defendant informed

plaintiff that "effective close of business December 24, 2004," it would "no longer accommodate

the medical restriction" recommended by her physician.  Declaration of Michael R. Hartman in

Support of Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the Alternative, for

Summary Judgment ("Hartman Decl.") Ex. A (Letter from Evelyn H. Stevens, Benefits Officer, Human Resources Division, District of Columbia Courts, to Apryl N. Featherston (Dec. 14, 2004)) [Dkt. # 35-1].

Plaintiff alleges that after receiving this letter, she "asked to be transferred to a different position that would not aggravate her injury," but that her request was refused. Compl. ¶¶ 27–28. Instead, her employer allegedly ordered her to return to regular duty or be terminated. *Id.* ¶ 29. In or around January 2005, plaintiff's physician certified her for regular duty, to which she then returned. Def.'s Facts ¶ 7; Pl.'s Facts ¶ 7. Nonetheless, her physician continued to diagnose her with bilateral carpel tunnel syndrome and continued to advise that she "avoid repetitive motion activities involving use of both wrists." Hartman Decl. Ex. C (Letter from Roger L. Raiford, M.D., to Apryl Featherston (Mar. 11, 2005)) [Dkt. # 35-1]. Plaintiff alleges that after her return, "her supervisors . . . intimidate[d] and harass[ed] her by favoring more junior employees' leave requests, criticizing her attire, and generally imposing demeaning requirements not related to [the] performance of her duties but rather intended to harass her and retaliate against her for her disability." Compl. ¶ 31.

1. Intake Questionnaire as Formal Charge?

Plaintiff submitted an intake questionnaire concerning this alleged discrimination to the Equal Employment Opportunity Commission ("EEOC"), which she dated August 14, 2006. Mot. Ex. 4 (Intake Questionnaire) [Dkt. # 34-1]. She later was terminated from her employment effective October 13, 2006. Def.'s Facts ¶ 8; Pl.'s Facts ¶ 8; Hartman Decl. Ex. H (Notice of Personnel Action (Oct. 16, 2006)) [Dkt. # 35-1]. She then submitted a formal charge

of discrimination with the EEOC, which was date-stamped by the Washington Field Office of the

EEOC on October 20, 2006.  Hartman Decl. Ex. E (Charge of Discrimination) [Dkt. # 35-1].

Now, in Count I, plaintiff claims that she was discriminated against in violation of the ADA.

Compl. ¶¶ 35–39.  Defendant has moved for summary judgment on Count I, arguing that plaintiff

filed her charge of discrimination with the EEOC after the applicable limitations period had

expired.  Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Mot.")

at 1 [Dkt. # 34]; Memorandum of Points and Authorities in Support of Defendant's Motion to

Dismiss or, in the Alternative, for Summary Judgment ("Mem.") at 6–8 [Dkt. # 34].[1]  This

motion will be granted in part and denied in part.

---

[1]      Defendant writes that it "is entitled to judgment as a matter of law on Count I of
the complaint because plaintiff cannot state an actionable ADA reasonable accommodation
claim."  Mot. at 1.  Defendant thus conflates language concerning summary judgment – "entitled
to judgment as a matter of law" – with language concerning dismissal for failure to state a claim
– "cannot state an actionable . . . claim."  *Id.*; *compare* Fed. R. Civ. P. 12(b)(6) *with* Fed. R. Civ.
P. 56(a).  The Court therefore must determine which Rule to apply when considering defendant's
motion concerning Count I.

        Although a statute of limitations argument may be raised as an affirmative defense
in an ADA case in a Rule 12(b)(6) motion, *see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385,
393 (1982); *Hodge v. United Airlines*, 666 F. Supp. 2d 14, 17 (D.D.C. 2009), the Court must
treat defendant's argument as one for summary judgment in this case.  When considering a
motion to dismiss under Rule 12(b)(6), if "matters outside the pleadings are presented to and not
excluded by the court, the motion must be treated as one for summary judgment under Rule 56."
Fed. R. Civ. P. 12(d).  Although "[e]xhibits such as . . . EEOC . . . documents . . . may be
considered in deciding the motion to dismiss because matters incorporated by reference or
integral to the claim, items subject to judicial notice, matters of public record, orders, and items
appearing in the record of the case . . . may be considered by the district court without converting
the motion into one for summary judgment," *Dyson v. District of Columbia*, No. 10-cv-1454,
2011 WL 3835681, at *3 n.3 (D.D.C. Aug. 31, 2011) (quotation, quotation marks, and brackets
removed), the Court must consider more than just EEOC documents to resolve this portion of
defendant's motion.  Therefore, to whatever extent defendant makes its argument concerning
Count I under Rule 12(b)(6), in addition to or as opposed to Rule 56, that argument nonetheless
must be considered as made under Rule 56.

In "jurisdictions having a [Fair Employment Practices ("FEP")] agency with subject matter jurisdiction over the charges" of discrimination made by a complaining party, an EEOC filing is timely "if the charge is received within 300 days from the date of the alleged violation." 29 C.F.R. § 1601.13(a)(4)(ii)(A); *see* 42 U.S.C. § 2000e-5(e)(1). The District of Columbia has an FEP: the District of Columbia Office of Human Rights ("DCOHR"). 29 C.F.R. § 1601.80. Therefore, plaintiff's charge is timely only if it was received within 300 days of the date of the alleged discrimination. If an "employee does not submit a timely EEOC charge, the employee may not challenge" in court the discrimination alleged in the charge. *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 624 (2007) (citing 42 U.S.C. § 2000e-5(f)(1)), *superseded by statute on other grounds*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009). To determine when the charge was received, the Court must first determine what document constitutes the charge in this case: the intake questionnaire or the formal charge of discrimination.

Initially, defendant, pointing to the intake questionnaire plaintiff submitted to the EEOC, asserted that "Plaintiff filed her EEOC complaint on or about August 14, 2006," the date plaintiff signed her questionnaire. Def.'s Facts ¶ 9; *see* Mot. Ex. 4. Plaintiff agreed. Pl.'s Facts ¶ 9. Upon further briefing on the issue of whether "the intake questionnaire, as opposed to the formal charge of discrimination, constitutes the charge in this case," Order of September 28, 2011 ("Briefing Order") at 1 [Dkt. # 41], the parties have refined their arguments. Plaintiff maintains that her intake questionnaire constitutes the charge in this case, making August 14, 2006 the date on which she filed her EEOC complaint. Plaintiff's Brief in Response to the Court's Request for Additional Briefing Bearing on Defendant's Motion to Dismiss ("Pl.'s Br.")

at 1–4 [Dkt. # 46].  Defendant now argues, however, that plaintiff's formal charge constitutes the

charge in this case and contends that the date on which this formal charge was date-stamped by

the EEOC Washington Field Office – October 20, 2006 – is the date on which plaintiff filed her

EEOC complaint.  Defendant's Supplemental Memorandum of Points and Authorities in Support

of Motion to Dismiss ("Def.'s Br.") at 1–3 [Dkt. # 47]; *see* Hartman Decl. Ex. E, Charge of

Discrimination.  The Court agrees with defendant.

An intake questionnaire, which is a document with which a potential complainant

provides information to the EEOC relevant to filing a formal charge of discrimination under the

ADA, may itself constitute a charge when it contains the "information required by the

regulations, i.e., an allegation and the name of the charged party," and when it may "be

reasonably construed as a request for the agency to take remedial action to protect the employee's

rights or otherwise settle a dispute between the employer and the employee," such as when "the

filer requests the agency to activate its machinery and remedial processes."  *Fed. Express Corp.

v. Holowecki*, 552 U.S. 389, 402 (2008); *see also* 29 C.F.R. § 1601.12(b) (requiring a charge to

contain at least "a written statement sufficiently precise to identify the parties, and to describe

generally the action or practices complained of").  The question, then, is whether a particular

intake questionnaire meets this test.  *See, e.g.*, *Johnson-Parks v. D.C. Chartered Health Plan*,

713 F. Supp. 2d 39, 45–46 (D.D.C. 2010) (evaluating whether an intake questionnaire constituted

a charge under the *Holowecki* standard); *Hodge v. United Airlines*, 666 F. Supp. 2d 14, 20–21

(D.D.C. 2009) (same regarding charge questionnaire); *Beckham v. Nat'l R.R. Passenger Corp.*,

590 F. Supp. 2d 82, 86–87 (D.D.C. 2008) (same regarding charge questionnaire).  The Court

8

concludes that the intake questionnaire in this case does not satisfy the *Holowecki* standard for consideration of a questionnaire as a charge.

In this case, plaintiff did not sufficiently identify the charged party in her questionnaire. Although she did identify her supervisors by name and title, nowhere does plaintiff mention where she worked: the Superior Court of the District of Columbia. *See* Mot. Ex. 4, Featherston Intake Questionnaire. In addition, although plaintiff generally described the actions complained of in the intake questionnaire by providing a concise statement, including dates, of the discrimination she allegedly suffered, it is not reasonable to construe plaintiff's questionnaire as a request for remedial action to be taken immediately. *See id.* Nowhere did plaintiff actually request that any action be taken. And while a plaintiff need not necessarily expressly request that the EEOC take a particular action in an intake questionnaire – for example, "[t]here might be instances where the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required," *Fed. Express Corp. v. Holowecki*, 552 U.S. at 405 – in this case, plaintiff used the intake questionnaire simply to provide information about the alleged discrimination she suffered and nothing more. *Cf. id.* (finding that an intake questionnaire constituted a charge where it was supplemented by a detailed six-page affidavit that specifically asked the agency to "force" the employer to end its age discrimination).

In *Beckham v. Nat'l R.R. Passenger Corp.*, 590 F. Supp. 2d at 86, Judge Collyer evaluated the purpose of a charge questionnaire – the successor to the intake questionnaire – to conclude that in some cases it could suffice as a charge of discrimination without a specific request from the complaining party that the EEOC take any specific action. In that case,

however, the questionnaire's "stated purpose" was "to solicit information in an acceptable form consistent with statutory requirements to enable the Commission to act on matters within its jurisdiction." *Id.* at 87 (quotation marks and emphasis omitted).  That purpose was "materially different" from the stated purpose of the questionnaire at issue in *Holowecki*, which was "'to facilitate pre-charge filing counseling and to enable the agency to determine whether it has jurisdiction over potential charges'" – language that counseled against construing the questionnaire as a charge in *Holowecki*.  *Beckham v. Nat'l R.R. Passenger Corp*, 590 F. Supp. 2d at 87 (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. at 405).  Furthermore, the questionnaire in *Beckham* specified that if "no timely charge is subsequently filed," the questionnaire itself would "activate the agency's machinery and remedial processes irrespective of whether agency action had been directly requested."  *Id.*

Plaintiff urges the Court to conclude that the questionnaire in this case is substantially similar to that in *Beckham*, and substantially different from that in *Holowecki*, such that it may be considered a charge.  Pl.'s Br. at 3.  The Court disagrees.  The relevant language of the questionnaire here is: "Principle purposes: Provid[ing] information from the Charging Party relevant to filing a charge of discrimination"; and "Routine uses: This questionnaire is used to make an official determination whether facts exist to prepare a charge of discrimination."  Mot. Ex. 4, Featherston Intake Questionnaire, at 3.  Unlike the language of the questionnaire in *Beckham*, the language of the questionnaire in this case does not signify that the EEOC would act on a completed questionnaire without more.  Rather than soliciting information to permit the EEOC to act on matters within its jurisdiction as in *Beckham*, the language of the questionnaire in this case solicits information to permit the EEOC to determine whether a charge should be

10

prepared, only subsequent to which the EEOC would act on matters within its jurisdiction.  This

is more akin to the "counseling" language of the questionnaire in *Holowecki*.  And unlike in

*Beckham*, the language of the questionnaire in this case nowhere indicates that the EEOC would

undertake remedial action if no formal charge were later filed.

Considering plaintiff's failure to sufficiently identify the party against whom she

makes her allegations of discrimination, the lack of an explicit request that the EEOC take

remedial action for such discrimination, and the lack of textual indication in the intake

questionnaire that the EEOC would take such action without a formal charge subsequently being

filed, this Court concludes that the intake questionnaire in this case does not constitute the

charge.  The later-filed formal charge therefore constitutes the charge.  The Court must next

determine when that formal charge was filed.

### 2.  When Was the Formal Charge Filed?

"The date a complaining party submits a charge of discrimination to the EEOC is

not necessarily the date used to determine timeliness, because the EEOC must allow the FEP

agency to proceed under state law before a charge is deemed filed with the EEOC."  *Lee v.*

*District of Columbia*, 733 F. Supp. 2d 156, 160 n.5 (D.D.C. 2010) (citing 29 C.F.R.

§ 1601.13(a)(3)(ii)).  The DCOHR – the FEP agency in this jurisdiction – "has waived its

exclusive jurisdiction during this 'deferral' period," however, as it is entitled to do.  *Id.* (citing

*Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1373 (D.C. Cir. 2008)).  And if a

"document on its face constitutes a charge within a category of charges over which the FEP

agency has waived its rights to the period of exclusive processing . . . , the charge is deemed to be

11

filed with the [EEOC] upon receipt of the document" by the EEOC.  29 C.F.R.

§ 1601.13(a)(3)(ii)(A); *see also Lee v. District of Columbia*, 733 F. Supp. 2d at 160 n.5.

Plaintiff's charge is stamped as having been received by the EEOC's Washington Field Office on

October 20, 2006.  *See* Hartman Decl. Ex. E, Charge of Discrimination.  Therefore, that is the

date on which plaintiff filed her charge with the EEOC.

        Defendant argues that plaintiff's EEOC charge was untimely because "Plaintiff

learned of the District's decision that it could no longer accommodate her disability on December

14, 2004," when it first informed her that it would no longer accommodate her disability,

allegedly making her charge due on or before October 10, 2005.  Mem. at 7.[2]  Plaintiff filed her

charge well after October 10, 2005.  Therefore, defendant says the charge is untimely, making

plaintiff's failure-to-accommodate claim presented here based on that charge also untimely.  *Id.*

at 8; *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (discussing the time

limits imposed by Section 2000e-5(e)(1) and holding that a "claim is time barred if it is not filed

within these time limits").  This argument, however, relies on an unjustifiably  narrow view of

the claims pled in Count I.

        Plaintiff does not allege only one discrete failure to accommodate that occurred on

December 14, 2004.  Instead, she alleges a broad range of discriminatory actions taken against

her that continued until her termination in October 2006: She allegedly "suffered adverse

employment actions including intimidation, harassment, denials of advancement, imposition of

demeaning requirements not related to her job performance, failure to train her for new duties,

---

[2]      Defendant incorrectly claims that plaintiff's charge was due by September 30,
2005, Mem. at 7, which was the 290th day after December 14, 2004.  The 300th day was October
10, 2005.

failure to transfer her to a different job, and termination of her employment." Compl. ¶ 38; *see id.* ¶ 31; Opp'n at 9. Defendant, in its reply, simply restates its narrow construction of plaintiff's "failure to accommodate claim." Defendant District of Columbia's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, or in the Alternative for Summary Judgment ("Reply") at 1–2 [Dkt. # 36]. Defendant does not address the fact that plaintiff's claim, as set forth clearly in her complaint, is one for multiple incidents of discrimination under the ADA, not just for the failure to accommodate. *See id.*[3] Moreover, specifically concerning failure to accommodate, plaintiff contends in her charge that she "requested but was denied reasonable accommodations . . . beginning in 12/04 *and continuing to the present*." Hartman Decl. Ex. E, Charge of Discrimination (emphasis added); *see* Opp'n at 10. As the Supreme Court has said: "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. at 113; *see Rand v. Geithner*, 609 F. Supp. 2d 97, 101 (D.D.C. 2009); *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 137 (D.D.C. 2004). Therefore, in this case, any ADA claims concerning discrete discriminatory acts that occurred more than 300 days before plaintiff filed her charge are presumptively time-barred, but any ADA claims concerning discrete acts that occurred 300 or fewer days before plaintiff filed her charge are timely.

The former set of claims is only presumptively untimely because filing a timely ADA charge with the EEOC is a requirement that may be subject to waiver, estoppel, and

---

[3]     Nor does defendant address whether plaintiff's broad claims in Count I are like or reasonably related to the allegations of the charge, or whether they arise form the administrative investigation that can reasonably be expected to have followed the charge. *See Johnson-Parks v. D.C. Chartered Health Plan*, No. 09-cv-1492, 2011 WL 3835671, at *3 (D.D.C. Aug. 31, 2011). If not, plaintiff has not administratively exhausted her claims before the EEOC. *See id.*

equitable tolling.  *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. at 393; *Mondy v. Sec'y of the Army*, 845 F.2d 1051 (D.C. Cir. 1988); *Stewart v. District of Columbia*, No. 04-cv-1444, 2006 WL 626921, at *7 (D.D.C. Mar. 12, 2006).  Defendant has certainly not waived its objection to litigation of time-barred claims; hence its dispositive motion.  *See* Mot.  Plaintiff suggests, however, that estoppel or tolling should apply.  Opp'n at 35.  The Court disagrees.

"Equitable estoppel requires active steps amounting 'to a deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge, . . . such as hiding evidence or promising not to rely on a statute of limitations defense.'"  *Chennareddy v. Dodaro*, 698 F. Supp. 2d 1, 19 (D.D.C. 2009) (quoting *Hedrich v. Bd. of Regents of Univ. of Wis. Sys.*, 274 F.3d 1174, 1182 (7th Cir. 2001)).  Similarly, "[e]quitable principles favor tolling where, for example, a defendant engaged in affirmative misconduct or misled a plaintiff about the running of a limitations period." *Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 753–54 (D.C. Cir. 1998) (quotation, internal quotation, quotation marks, and brackets omitted).  Plaintiff argues only that her ADA "claims relate to a common nucleus of operative facts" and points out that defendant has not argued that it would be prejudiced if made to defend against considerations of otherwise time-barred ADA claims.  Opp'n at 35.  But "[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. at 113.  Mere relation to a common nucleus of operative facts, therefore, is not enough to justify estoppel or tolling in this case.  Furthermore, the burden is on plaintiff to show why estoppel or tolling is justified, not on the defendant to show why it would be prejudiced by estoppel or tolling.  *Hamilton v. Geithner*, 743 F. Supp. 2d 1, 9 (D.D.C.

14

2010); *see also Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d at 137–38.  Accordingly, even assuming that defendant has not made a showing of prejudice, plaintiff has not satisfied her burden.

The 300th day before plaintiff filed her charge was December 24, 2005. Defendant therefore is entitled to summary judgment on Count I to the extent that it contains ADA claims based on discrete acts that occurred before that date, because such claims were not timely presented to the EEOC.  Defendant is not entitled to summary judgment on Count I, however, to the extent that it contains ADA claims based on discrete acts that occurred on or after that date, because such claims were timely presented to the EEOC.[4]

B. *Summary Judgment Will Not Be Entered on Count II, nor Will Count II Be Dismissed*

In Count II, plaintiff advances a claim similar to that made under the ADA in Count I: that defendant failed to reasonably accommodate her disability, in violation of the Rehabilitation Act, Compl. ¶¶ 40–44, which generally requires a government employer "to make reasonable accommodation to the limitations of a handicapped employee unless the [employer] can show such accommodation would impose an undue hardship on its operations," *Whitlock v. Donovan*, 598 F. Supp. 126, 130 & n.4 (D.D.C. 1984) (citing 29 U.S.C. § 791(b)) (quotation and

_____

[4]     Defendant also argues that Count I should be dismissed because a plaintiff must file suit within 90 days of receiving a notice of her right to sue from the EEOC, 42 U.S.C. § 2000e-5(f)(1) (setting forth 90-day limitations period); *id.* § 12117(a) (incorporating Section 2000e-5 for the purposes of the ADA), and because plaintiff failed to commence this suit within that 90-day period, Mem. at 8–10.  The Court gives no credence to this argument, which has been previously considered and decided earlier in this litigation.  *See* Mem. Op. and Order at 4–5 [Dkt. # 22].  Defendant does not even attempt to argue why the Court should reconsider that decision, but instead merely repeats its previously unsuccessful argument.  *Compare* Mem. at 8–10 *with* Def.'s Mot. to Dismiss at 7 [Dkt. # 20].  That argument remains unconvincing.

quotation marks removed), *aff'd sub nom Whitlock v. Brock*, 790 F.2d 964 (D.C. Cir. 1986).  To

timely advance a claim under the Rehabilitation Act, a plaintiff must file suit within 90 days of

receiving a notice of her right to sue from the EEOC.  42 U.S.C. § 2000e-5(f)(1) (setting forth

90-day limitations period); 29 U.S.C. § 794a(a) (incorporating Section 2000e-5 for the purposes

of the Rehabilitation Act).  Defendant argues that plaintiff failed to commence this suit within

that 90-day period.  Mem. at 8–10.  The Court will not respond in detail to that argument here,

because it has previously considered and rejected the argument.  *See* Mem. Op. and Order at 4–5

[Dkt. # 22].  Defendant does not even attempt to explain why the Court should reconsider its

earlier decision, but instead merely repeats its previously unsuccessful argument.  *Compare*

Mem. at 8–10 *with* Def.'s Mot. to Dismiss at 7 [Dkt. # 20].  That argument remains

unconvincing.

### C.  The Complaint Will Be Amended to Remove Count III

In Count III, plaintiff alleges that her "bilateral carpal tunnel syndrome constitutes

an injury under the disability compensation provisions of the" District of Columbia

Comprehensive Merit Personnel Act of 1978 ("CMPA").  Compl. ¶ 46.  She thus claims that she

"is entitled to compensation for the period subsequent to her termination" as well as "augmented

compensation for her dependants," and that defendant has failed to make timely decisions on her

claims for such compensation.  *Id.* ¶¶ 47, 50–52; Opp'n at 11.

"The CMPA is '[w]ith few exceptions . . . the exclusive remedy for a District of

Columbia employee who has a work-related complaint of any kind.'"  *Sharma v. District of*

*Columbia*, No. 10-cv-1033, 2011 WL 2418917, at *6 (D.D.C. June 17, 2011) (quoting *Robinson*

*v. District of Columbia*, 748 A.2d 409, 411 (D.C. 2000)); *see also Holman v. Williams*, 436 F.

Supp. 2d 68, 74 (D.D.C. 2006).   One major exception appears to apply in this case, however: The

CMPA applies to "all employees of the District of Columbia government, *except* the Chief

Judges and Associate Judges of the Superior Court of the District of Columbia and the District of

Columbia Court of Appeals" – i.e., the judicial personnel of said courts – "and *the nonjudicial*

*personnel of said Courts*."   D.C. Code § 1-602.01(a) (emphasis added).   The CMPA thus appears

simply not to cover plaintiff, who claims to have been a nonjudicial employee of the Superior

Court.   Compl. ¶¶ 2, 7.   The Court therefore invited plaintiff to submit further briefing on

"whether the CMPA applies at all to plaintiff."   Briefing Order of September 28, 2011, at 2.

      In response, plaintiff "concedes that . . . she falls within the CMPA exclusion" and

purports to withdraw Count III.   Pl's Br. at 4.   Plaintiff does not identify the authority under

which she makes this withdrawal.   The Court therefore construes the purported withdrawal as a

motion to amend the complaint to remove Count III or, alternatively, to partially voluntarily

dismiss her case.   *See* Fed. R. Civ. P. 15(a)(1), 41(a)(2); *see, e.g.*, *Mix v. E.F. Hutton & Co., Inc.*,

720 F. Supp. 8, 8 (D.D.C. 1989) (construing a "surprise notice" of intent to withdraw a claim as

"a motion to amend the complaint[] or for partial voluntary dismissal").

      To the extent that plaintiff has moved to voluntarily dismiss Count III, that motion

will be denied because Rule 41 of the Federal Rules of Civil Procedure only permits complete

dismissal of an "action," not partial dismissal of "fewer than all the claims."   *Sudnick v. Dep't of*

*Def.*, 474 F. Supp. 2d 91, 95 n.3 (D.D.C. 2007) (quotation marks omitted).   To the extent that

plaintiff has moved to amend her complaint to remove Count III, that motion will be granted.

Because plaintiff has already once amended her complaint, *see* Compl., she may only amend her

complaint again "with the opposing party's written consent or the court's leave."  Fed. R. Civ. P.

15(a)(2).  The Court will grant leave to amend.

"The court should freely give leave when justice so requires."  Fed. R. Civ. P.

15(a)(2).  The Supreme Court has elucidated this standard:

> In the absence of any apparent or declared reason – such as undue
> delay, bad faith or dilatory motive on the part of the movant,
> repeated failure to cure deficiencies by amendments previously
> allowed, undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment, etc. – the
> leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1964).  Applying that standard in this case, the Court sees

no reason why plaintiff should not be permitted to remove Count III from her complaint.

Therefore, plaintiff will be granted leave to amend her complaint to remove Count III and the

complaint will be so amended.  Because Count III will no longer be at issue in this case, the

Court will deny defendant's dispositive motion in part as moot as to arguments that Count III

should be dismissed or that summary judgment should be entered on Count III.

### D. Count IV Will Be Dismissed

In Count IV, plaintiff alleges that defendant discharged her "on grounds that

violate public policy."  Compl. ¶ 55.  "Under District of Columbia law, it is a general rule that

'an employer may discharge an at-will employee at anytime and for any reason, or no reason at

all'" – the at-will employment doctrine.  *Owens v. Nat'l Med. Care, Inc.*, 337 F. Supp. 2d 131,

137–38 (D.D.C. 2004) (quoting *Adams v. George W. Cochran & Co., Inc.*, 597 A.2d 28, 30 (D.C.

1991)).  There is a narrow exception to that doctrine, however, when an employee is discharged

in violation of public policy – the public-policy exception.  *Carl v. Children's Hosp.*, 702 A.2d

159, 160 (D.C. 1997) (en banc); *Adams v. George W. Cochran & Co., Inc.*, 597 A.2d at 30.  "To

state a claim under this public policy exception . . . , the plaintiff must show that . . . (1) [she]

engaged in a protected activity," such as refusal to violate a law; "(2) the employer took an

adverse personnel action against [her]; and (3) there was a causal connection between the two."

*Owens v. Nat'l Med. Care, Inc.*, 337 F. Supp. 2d at 137; *see also Holman v. Williams*, 436 F.

Supp. 2d at 76–78.  Plaintiff's mention of termination in violation of public policy is thus an

attempt to plead the public-policy exception to the at-will employment doctrine.

   Defendant has moved to dismiss Count IV because plaintiff failed to plead that

she was engaged in a protected activity, that she was fired for such engagement, or that there was

any causal connection between those unpled allegations.  Mem. at 12–13.  Defendant is correct:

Plaintiff's one-line assertion that she was discharged in violation of public policy is but a mere

label and conclusion not sufficient to state a claim.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S.

at 545.  Therefore, to the extent that plaintiff is an at-will employee, she has failed to state a

wrongful termination claim upon which relief can be granted.

   Plaintiff now responds that she "was not an at-will employee."  Opp'n at 13

(emphasis removed).  Instead, she claims to have been a career employee who may be discharged

only for cause.  *Id.*  But the public-policy exception plaintiff has attempted to plead only applies

to the at-will employment doctrine.  *See Owens v. Nat'l Med. Care, Inc.*, 337 F. Supp. 2d at 137.

To the extent that plaintiff is a career employee, then, she essentially concedes that she has failed

to state a claim for termination in violation of public policy; her claim would instead be one for

termination without cause, which she has not pled in Count IV.  Therefore, Count IV will be dismissed.[5]

## IV.  CONCLUSION

For the reasons discussed above, plaintiff's purported withdrawal of Count III will be construed as a motion to amend the complaint to remove Count III or, alternatively, to voluntarily dismiss Count III.  That motion will be granted in part and denied in part and the complaint will be amended to remove Count III.  Defendant's dispositive motion will also be granted in part and denied in part.  Count IV will be dismissed.  All that will remain in this case, therefore, is Count I, but only to the extent that it contains claims concerning discrete acts of discrimination that occurred on or after December 24, 2005, and Count II.  An appropriate Order to this effect will be issued this same day.


/s/_____
PAUL L. FRIEDMAN
DATE:   January 17, 2012                              United States District Judge

---

[5]        Defendant also argues that it is entitled to summary judgment on Count IV because plaintiff has not "produced any documents or interrogatory responses which would lead to the conclusion that she participated in any protected activity."  Mem. at 13.  Because the Court will dismiss Count IV for failure to state a claim, the Court need not address that summary judgment argument.